NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TRIANGLE PUBLICATIONS, INC.,
Respondent.

TRIANGLE PUBLICATIONS, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 73–1791 and 73–1853.

United States Court of Appeals,
Third Circuit.

Argued May 29, 1974.

Decided June 28, 1974.

As Amended July 26, 1974.

Allison W. Brown, Jr., David S. Fishback, Peter G. Nash, John S. Irving, Patrick H. Hardin, Elliott Moore, Washington, D. C., for National Labor Relations Board.

Edward N. Schwartz, Maplewood, N. J., for Triangle Publications, Inc.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

OPINION OF THE COURT

PER CURIAM.

This case is before the court on the application of the National Labor Relations Board for enforcement of its order, issued June 29, 1973, against Triangle Publications, Inc. (the Company) and on a cross-petition for review of the Board's order filed by the Company. The question presented is whether substantial evidence on the record as a

whole supports the Board's conclusion that the Company violated Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) (1970). We have concluded that there is substantial evidence to support the Board's decision and that its order should be enforced in full.[1]

The § 8(a)(1) violation is based upon an incident involving Friedlander, an employee of the Company, and Grossman, who at all relevant times was in charge of the Hightstown plant where Friedlander was employed. On February 3, 1972 Friedlander spent a part of the work day collecting the names and addresses of his co-workers so that a union could get in touch with them.[2] Later in the day, a conversation occurred between Friedlander and Grossman, and, according to Friedlander, a second conversation occurred on the following day.

It is the nature of Grossman's comments during these discussions, as found by the Administrative Law Judge and adopted by the Board, that form the basis for the § 8(a)(1) violation. These findings are as follows:

"[Friedlander] was asked by Grossman why he was collecting [the names]. . . . When Friedlander admitted he was taking them for the use of the [union] . . . Grossman questioned the wisdom of such action and told him Flood [the production manager] was furious about it. The next day Grossman called him into his office and asked him just what he had done and what good he thought it would do him."

On the basis of these facts the Administrative Law Judge drew this conclusion:

"I find the interrogation on these two occasions, accompanied by Gross-

man's clear indication that it was not a smart thing to do and his statement that Jack Flood was furious about it, sufficient to make the interrogation coercive and to imply reprisals might be taken against Friedlander for his activity."

The Company attacks the findings and conclusion in two ways. First, it claims the record as a whole lacks substantial evidence to support the findings of fact. We cannot agree. While it is true that the Administrative Law Judge essentially accepted Friedlander's recollection of the conversations and rejected Grossman's we do not find this objectionable. Since both Grossman and Friedlander had a motive for lying,[3] and since neither told an inherently incredible story, the judge was making a reasonable credibility determination when he chose to credit Friedlander's account. We cannot overturn his findings of fact.

The Company's second contention is that even if we accept the facts as found by the Administrative Law Judge, they do not constitute a violation of § 8(a)(1). We reject this contention as well.

In Local 542, Int'l Union of Operating Eng. v. N.L.R.B., 328 F.2d 850 (3d Cir. 1964), this Court outlined the following test for determining whether a violation has occurred:

"That no one was in fact coerced or intimidated is of no relevance. The test of coercion and intimidation is not whether the misconduct proves effective. The test is whether the misconduct is such that, under the circumstances existing, it may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act." *Id.* at 852–853.

---

1. The Company's brief also suggests the back pay order made as a result of these violations should be "limited to the date of February 15, 1972 or to April 2, 1972" insofar as it relates to Jesse Friedlander. This claim is without merit.

2. This was a new plant and was not yet organized. However, the union involved had

represented the Company's employees at its New York plant for many years and Friedlander's involvement with the union was well known.

3. Grossman was a Company employee of twenty-three years standing at the time he testified. Appendix page 140.

In addition, our precedent indicates that we must defer to the Board's superior expertise when we review its determinations on this issue.

"As the economic dependence of employees on their employer may cause them to be peculiarly sensitive to nuances in language which would be lost on a neutral observer, the possibility that a statement contains an implied threat must be judged from the employee's point of view. For that reason the expertise of the Board is particularly relevant to the determination of whether a latent threat lies hidden in the words of an employer. Our scope of review is limited to inquiry as to whether the Board's determination is reasonable and supported by substantial evidence." Mon River Towing, Inc. v. N.L.R.B., 421 F.2d 1, 9–10 (3d Cir.1969) (footnotes omitted).

When judged by these standards we cannot find that the Administrative Law Judge was unreasonable when he concluded that coercion and the threat of reprisal were implicit in Grossman's words when he questioned the wisdom of Friedlander's activity and when he told him that the production manager was furious. The words themselves seem reasonably calculated to convey a threat of reprisal when directed to an empoyee. In addition, the reasonableness of this conclusion is buttressed by other facts in the record, particularly Friedlander's forced transfer from the Hightstown plant soon after the incident. Thus, the facts as found by the Administrative Law Judge provide a sufficient basis for the finding of a § 8(a)(1) violation.

We are also of the view that there is substantial evidence on the record as a whole to support the Board's finding of a § 8(a)(3) violation. Since the facts giving rise to this violation are adequately covered in the opinions of the Administrative Law Judge and the Board, we affirm on this basis of those opinions. See 204 N.L.R.B. No. 108 (1973).

The petition to set aside the order of the Board will be denied and the order will be enforced in full.

Judge Rosenn dissents as to the § 8(a)(1) charge only, because he is of the opinion that there is not substantial evidence on the record to support the Board's finding that the respondent, Triangle Publications, Inc., violated Section 8(a)(1) of the Act.