**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COPES–VULCAN, INC., Respondent.**

**Application for Enforcement of an Order of the National Labor Relations Board.**

**No. 78–2392.**

United States Court of Appeals, Third Circuit.

Argued Sept. 4, 1979.

Decided Oct. 11, 1979.

---

1. *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172, 1191–92 (3d Cir. 1977).

John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Marjorie S. Gofreed, Sandra K. Williams (argued), Attys., N. L. R. B., Washington, D. C., for petitioner.

George F. Lynch (argued), Stephen D. Bolerjack, Squire, Sanders & Dempsey, Cleveland, Ohio, for respondent, Copes-Vulcan, Inc.; Terrence F. Srsen, Corporate Industrial Relations, White Consolidated Industries, Inc., Cleveland, Ohio, of counsel.

Before SEITZ, Chief Judge, and GIBBONS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The National Labor Relations Board petitions for enforcement against Respondent,

Copes-Vulcan, Inc., of an order issued in an unfair labor practice proceeding. The Board found that the Company had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) (1976), by refusing to hire Josephine Barber because of her husband's union activities. It also found that the Company had violated section 8(a)(1) of the Act by coercively warning Mrs. Barber's husband, David Barber, in the course of a grievance investigation, to "watch his step" and to "keep his nose clean." We enforce the Board's order insofar as it relates to the charge that Mrs. Barber was denied employment because of her husband's union activities, but deny enforcement with respect to the coercion charge.

I

In 1975 Mrs. Barber was employed by Marx Toys, a company with which the International Association of Machinists and Aerospace Workers (IAMAW) had a contract. When she was laid off by Marx Toys she sought employment at Copes-Vulcan, where the IAMAW also had a contract, and where she could transfer pension benefits earned at Marx Toys. Her husband was employed at Copes-Vulcan, and served there as Chief Shop Steward for the union. It is undisputed that in January 1976 Mrs. Barber filled out a Copes-Vulcan employment application and that thereafter, until June of 1977, her husband made numerous inquiries about her employment. Following a telephone conversation with Joseph Benedek, Copes-Vulcan's industrial relations manager, in early June of 1977, in which Benedek allegedly admitted that she was denied employment because of her husband's union position, Mrs. Barber filed an unfair labor practice charge.

■ The reason Mrs. Barber was denied employment is sharply disputed. Copes-Vulcan contends that Mrs. Barber was denied employment for two reasons: an adverse recommendation from her former employer Marx Toys; and an attempted linkage by Mr. Barber of Mrs. Barber's employment with union grievance activity. Yield-

ing to pressure such as Barber allegedly applied would, of course, have violated section 302 of the Labor-Management Relations Act, 29 U.S.C. § 186(a)(4) (1976). That section prohibits employers from giving anything of value to a union representative with an intent to influence the representative in his representative capacity.

Mrs. Barber contends that different considerations prompted Copes-Vulcan to deny her employment. She contends that no such improper suggestions were made by her husband, that no adverse recommendation entered into the employment decision, and that she was denied employment solely because of Mr. Barber's union position. Crediting the testimony of company witnesses one would have to conclude that no unfair labor practice occurred. Crediting the testimony of Mrs. Barber's witnesses one would have to conclude that an unfair labor practice did occur. The Administrative Law Judge chose to credit the latter over the former. We have carefully reviewed all the evidence and conclude that the Administrative Law Judge's credibility determinations are supported by substantial evidence on the record as a whole. See NLRB v. Triangle Publications, Inc., 500 F.2d 597, 598 (3d Cir. 1974).

■ Therefore, the Board's order requiring Copes-Vulcan to offer Mrs. Barber immediate employment and to make her whole for any loss suffered by reason of its discrimination against her in employment will be enforced.

II

During the hearing on Mrs. Barber's discrimination charge testimony was elicited about an incident which occurred in October or November, 1977, after Mrs. Barber's charge had been filed, in which Mr. Barber and two other union committeemen, while investigating a grievance, were approached by Copes-Vulcan industrial relations manager Benedek. Benedek allegedly told Mr. Barber to "keep [his] nose clean" and to "watch [his] step" because "other people [were] watching [him]." At the end of the General Counsel's rebuttal testimony the

General Counsel moved to amend the complaint to allege an independent section 8(a)(1) charge of threats of reprisal for union activities. The Company objected to the proposed amendment. It contended that allowing an amendment at such a late stage in the proceedings would deny it procedural due process. It also contended that in the context of a grievance investigation the reported conversation was either not threatening, or of so de minimus a character as not to warrant an unfair labor practice charge. The Administrative Law Judge allowed the amendment, and granted the Company leave to reopen its case as well as a ten minute recess in which to prepare its defense.

Some witnesses to the incident were unavailable on such short notice. Moreover, Mr. Barber testified that he and the two other committeemen who accompanied him were in a group when the statements were made, and that the statements were prefaced by a remark asking if committeemen customarily "travel[ed] in groups of three." Benedek, the alleged source of the threatening remarks, testified, without contradiction, that the Company's bargaining agreement limited a committeeman's responsibility to certain areas of the plant, and that committeemen had previously been warned against congregating outside their assigned areas of responsibility. The conversation took place in the course of a grievance investigation in which Benedek had as much interest as did the union representatives.

We conclude that under these circumstances the credited remarks could not reasonably have tended to coerce or intimidate Barber in the exercise of his section 7 rights. Some room for play in exchanges between union and management personnel responsible for processing grievances must be permitted if grievance processing is to work. Remarks such as Benedek allegedly made to Barber, a Shop Steward with over eight years of experience, and a union official who had processed scores of grievances in the past, are in our view of so de minimus a nature as not to command resort to our injunctive remedy. See National Labor Relations Act, 29 U.S.C. § 158(c) (1973); see, e. g., NLRB v. McCormick Steel Co., 381 F.2d 88, 91 (5th Cir. 1967); cf. Firestone Synthetic Fibers Company v. NLRB, 374 F.2d 211, 213–215 (4th Cir. 1967). Because of our disposition of the Company's de minimus contention we have no occasion to pass upon its contention that it was denied procedural due process by the late amendment of the complaint.

III

The Board's order will be enforced insofar as it directs Copes-Vulcan to offer Josephine Barber immediate employment, and insofar as it directs Copes-Vulcan to make her whole for any loss suffered by reason of discrimination against her because of her husband's union activity. In all other respects enforcement will be denied. Each party shall bear its own costs.